THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS B.
RYDER, Relator, *v.* WILLIAM H. WOODWORTH, City Assessor of
the City of Rochester, Monroe County, New York and Others,
Respondents.

Supreme Court, Monroe County, April 29, 1942.

*Remington & Remington [Thomas H. Remington* of counsel], for
the relator.

*William H. Emerson, Corporation Counsel [Andrew L. Gilman*
of counsel], for the respondents.

WHEELER, J.   This is a proceeding in certiorari to review an
assessment upon the ground that the property of relator has been

overassessed. The official referee having taken voluminous proof has submitted his report recommending that the assessment for the years 1938 and 1939 should be reduced from $85,200 to $45,000, he having found the full value to be $40,000.

The function of the referee was merely to hear and report, not to hear and determine. It is the court which is charged with the responsibility of making final determination, aided by the referee's report. (*Bannon* v. *Bannon*, 270 N. Y. 484.)

There is just one question of fact involved *i. e.* what was the fair market value of this property on the assessment dates for the years 1938 and 1939?

The referee and the court have had the benefit of the well-considered opinions of four of the outstanding real estate experts of the city of Rochester, all being men of extraordinary experience and ability. The estimates of these experts reveal something more than the usual variations: Mr. Slade and Mr. Carmichael, for the relator, placing the value at approximately $34,000 and $30,000 respectively, whereas Mr. Appleby and Mr. Borchard, for the respondents, estimate the value from $85,000 to $93,000. This wide divergence of expert opinion is indicative of the fact that these gentlemen entertained entirely different views as to what constituted market value.

In fact, respondents urge that relator's witnesses have failed to recognize and apply the rule for determining market value as laid down by the Court of Appeals in decisions rendered since the onset of the current economic depression. (*Heiman* v. *Bishop* [1936] 272 N. Y. 83; *Matter of Board of Water Supply of New York* [1938] 277 id. 452.)

These later decisions have not established a new standard or basis of valuation for taxation under normal conditions, but at most have only adapted the well-recognized rule to extraordinary conditions of an abnormal market.

Market value is ordinarily measured by the price which could be obtained after a reasonable and ample time for sale, such as would usually be taken by an owner. (*People* ex rel. *Sebring* v. *Dowd*, 206 App. Div. 727.) The same general rule is reiterated by Judge Hubbs in *Heiman* v. *Bishop* (*supra*). However, it was there emphasized that the time-tested definition of market value is applicable only " under ordinary circumstances," and that " during the depression, ordinary conditions have not existed in the real property market. * * * conditions in that market have been extraordinary and unprecedented." The court then concludes that for such conditions, " the old standard of market value has become utterly useless. The new and unusual conditions

necessarily required a new standard for determining value." In lieu of the general rule which involves the price which one desiring but not compelled to purchase will pay to a seller who desires but is not compelled to sell, the Court of Appeals has indicated that evidence be received, " of the age and construction of the buildings * * * the rent received therefor, assessed value, location, condition of repair, the sale price of property of a similar nature in the neighborhood, conditions in the neighborhood which affect the value of property therein, accessibility and of all other elements which may be fairly considered as affecting the market value of real property in a given neighborhood. With such evidence before it, the trial court, in the exercise of its best judgment, should determine the market value of the premises in the existing circumstances."

Two years later in 1938 the Court of Appeals in *Matter of Board of Water Supply of New York (supra)* again considered the question of market value in connection with a condemnation proceeding. Judge Rippey writing for the court refers to the elements of value as set forth in *Heiman* v. *Bishop (supra)*, and further amplifying the subject states: " No single element standing alone is decisive. * * * ' Fair market value ' means neither panic value, auction value, speculative value, nor a value fixed by depressed or inflated prices. * * * ' Fair market value ' of property actually taken as of the date of appropriation resides in an estimate and a determination of what is the fair, economic, just and equitable value under normal conditions."

In the instant case, this court is satisfied that evidence of the various elements suggested by the Court of Appeals was received and considered by the various witnesses and the referee as well. However, after carefully reading the evidence, it seems reasonably clear that relator's witnesses have placed undue emphasis upon prices which could be realized in this depressed market. As a basis for comparable prices, they considered only sales taking place since the depression. The Court of Appeals has condemned this very thing: " In the depressed condition of the market for real property, the old standard for market value has become utterly useless." (*Heiman* v. *Bishop, supra.*) In other words the court has pointed out that under the extraordinary market conditions existing since the depression, sale prices do not establish market value. Mr. Carmichael's evidence is significant in this respect. He testified as follows: " My understanding of the term ' fair market value ' is that it means the value that can be fairly set up as to what the property would bring in the market at the time between a willing buyer, etc."

It must also be concluded that respondent's witnesses have placed too much importance upon comparative sales prices antedating the depression.

Unquestionably, relator's property as well as other large palatial residences in this exclusive residential neighborhood have receded in value since the beginning of the depression. In fact, this is conceded by respondents in their brief, the only dispute being as to the extent of the recession in values.

The extreme difference of opinion as to value between witnesses for relator and respondents may well be explained by the fact that relator seeks to use depression prices as a basis of value, and that respondents are attempting to freeze values in accordance with predepression prices. Both are wrong.

Relator's property is considered one of Rochester's finest residences. It has a frontage of 385 feet on East avenue and 400 feet on Hawthorn street. It is located in one of the most exclusive residential sections of the city. The buildings have a reconstruction cost of something over $70,000. They are old, but well built and in good state of repair. The intrinsic value of this property is indicated by the fact that relator in 1930 sold a strip of 100 feet off the back of this very property for $40,000.

Prior to the current depression, the portion of East avenue in question was not subjected to the economic decadence so frequently associated with the traditional " Main Street " in this and other cities. On the contrary, it maintained its status as an exclusive site for modern and beautiful homes, occupied by many of the city's best known and respected citizens. Whatever deterioration it has suffered is due almost entirely to the devastating effects of the depression. It must be conceded that in the years 1938 and 1939 the country in general was still in the throes of the depression, and therefore there was not a normal market for real estate in the city of Rochester or elsewhere, and particularly is this true in regard to large and expensive residences.

It may well be that time will demonstrate that the present extraordinary conditions are, in fact, normal and ordinary. Even a depression as such cannot exist forever. The indefinite continuation of this so-called depression will cause it to loose its abnormal or extraordinary characteristics. If and when that point is reached, we may be justified in again using the old standard in determining market value of real estate.

But in the meantime, it is the duty of assessors and of the court to make a determination of what is " fair, economic, just and equitable value under normal conditions." Radical changes in assessed valuations whether by increase or decrease should be

avoided if possible. Extreme reduction in assessments tends necessarily to bring about violent repercussions affecting the whole economic structure of the tax district.

After considering all the various elements mentioned by the Court of Appeals, this court is of the opinion that the full market value of relator's property on the 1938 and 1939 tax dates was $63,900.

Appropriate findings may be submitted. The referee's report in so far as it is inconsistent herewith is not to be confirmed.